## APPEAL OF WALTER H. SCHOELLKOPF.

Docket No. 6212.     Decided September 25, 1926.

*Held*, under the facts in this case, where the petitioner enterea into a contract in 1910 for the sale of a piece of real estate for a definite sum and thereafter, in 1920, made a conveyance thereof for the amount theretofore agreed upon, depreciation of the buildings on the property is not a factor entering into the determination of gain or loss on the sale.

*George G. Davidson, Jr., Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the Commissioner.

The petitioner has appealed from the determination of a deficiency in income tax for the year 1920 in the amount of $10,928.79, of which the sum of $6,443.83 is in dispute.   The Commissioner has determined the profit on the sale of certain real estate of the petitioner by making an adjustment for depreciation.   The petitioner contends that under the terms of an agreement which he entered into in 1910 he thereafter owned no interest in the real estate which was the subject of depreciation.

### FINDINGS OF FACT.

In the year 1910, the petitioner, Walter H. Schoellkopf and his sister, Genevieve S. vom Berge, were the owners of certain real estate in the City of Buffalo, N. Y., in which city they reside.   On January 11, 1910, they entered into an agreement, under seal, with the King Sewing Machine Co.   This agreement required the former to acquire title to certain additional premises and to furnish a title company's search, showing good title, clear of incumbrances, after which both parties were to enter into another agreement, the terms of which were specifically set out and which was to be executed and acknowledged like a deed.

An agreed value was assigned to the land already owned, for the purposes of both agreements.   The agreement was to bind the heirs, executors, administrators, successors and assigns of the respective parties.   The petitioner's wife joined in the agreement to waive her

dower.   Sears, Roebuck & Co. guaranteed performance by the King
Sewing Machine Co.

This agreement was signed and acknowledged by all parties and
thereafter all parties performed their parts according to the terms
of the agreement.

On July 12, 1910, the following agreement or contract was entered
into according to the terms of the former agreement:

### THIS AGREEMENT AND LEASE

Made and entered into this 12th day of July, A. D. Nineteen Hundred and ten,
by and between WALTER H. SCHOELLKOPF and GENEVIEVE S. VOM
BERGE, of the City of Buffalo, Erie County, New York, parties of the first
part, hereinafter designated as the lessors, and KING SEWING MACHINE
COMPANY, a domestic corporation, of the same place, hereinafter designated
as the lessee, WITNESSETH:

WHEREAS, in and by the terms and provisions of a certain agreement in
writing made and entered into by the parties hereto, bearing date on the elev-
enth day of January, A. D. 1910, said lessors promised and agreed to negotiate
for and acquire good title to certain premises particularly described in said
agreement, and also hereinafter particularly described, including any part not
owned by them on the 31st day of December, 1909; and that upon the acquisi-
tion of such title to all said premises, said lessors should furnish to said lessee
a Guaranty Company's search or searches showing good and sufficient title to all
said premises, clear of incumbrances; and thereupon, within thirty days after
furnishing such search, said lessee should make known to said lessors in writ-
ing its objection, if any, to said title, and in default thereof that said title
should be deemed good and satisfactory to said lessee; and thereupon said
parties should forthwith enter into a further agreement, for the erection upon
said premises of certain specified buildings, and for the lease and demise unto
said lessee of said premises, including the buildings so to be erected, containing
provisions for the sale of said premises by the lessors to said lessee, and the
purchase thereof by said lessee; and

WHEREAS, said lessors have, in accord with their said agreement, acquired
title to and now own all of the premises mentioned in said agreement of Janu-
ary 11, 1910, and hereinafter particularly described, and have likewise fur-
nished to said lessee, more than thirty days since, a Guaranty Company's
searches showing good title to said premises in them, free from incumbrances,
which searches said lessee has examined and finds, and has made, no objection
to said title, and said title is therefore deemed good and satisfactory to said
lessee, and is hereby acknowledged so to be, and

WHEREAS, the claim of the City of Buffalo mentioned in said agreement
has been liquidated and satisfied and contracts have been entered into by the
King Sewing Machine Company for the construction of the improvements on
said premises which are satisfactory to the lessors,

NOW, THEREFORE, in further accord with the terms of said agreement
of January 11, 1910, said parties hereto, said lessors and said lessee, do hereby
mutually agree to and with each other as follows:

SAID lessors, WALTER H. SCHOELLKOPF and GENEVIEVE S. VOM
BERGE, do hereby let and demise unto said KING SEWING MACHINE
COMPANY, said lessee, and said lessee does hereby lease from said lessors:

ALL THAT TRACT OR PARCEL OF LAND, situate in the City of Buffalo, County of Erie and State of New York, bounded and described as follows:

[Description of Premises]

for a term of ten (10) years to begin on the 1st day of April, A. D. nineteen hundred and ten and to end on the 1st day of April, A. D. nineteen hundred and twenty, at twelve o'clock noon, of said day.

AND said lessors do hereby promise and agree to erect upon said premises above described, at their own cost and expense, buildings for factory purposes, and buildings for foundry purposes according to plans and specifications heretofore furnished by said lessee, and under its supervision, at a cost not to exceed Two Hundred Thousand Dollars ($200,000) to the lessors, any excess to be paid by the lessee, the same to be erected under contracts entered or to be entered into by the said lessee for the erection of the same with responsible contractors, upon the best terms obtainable, which shall provide for partial payments as the work progresses. It shall insure said improvements in satisfactory companies as the work progresses. The amounts becoming due upon said building contracts shall be duly ascertained by said lessee from time to time and duly certified by it to the lessors, who shall thereupon pay said amounts to the parties entitled to receive the same under said building contracts.

FOR the annual rental for said land, and for said improvements so to be made, said lessee shall pay, and does hereby agree to pay, quarterly, in advance, during said term, a sum equal to six per cent per annum upon the amount of the said lessor's investment for land and improvements, as hereinafter stated and provided, and shall also pay as the same may respectively be incurred, imposed or become due, or payable or chargeable upon said premises or any part thereof from time to time during said term, the amount of all expenses connected with the upkeep and maintenance of said premises and improvements, including taxes, ordinary and extraordinary, repairs, gas, electric lighting and power, water rates, insurance premiums upon policies of insurance equaling the full value of the improvements; and said lessee agrees to keep said improvements insured for the benefit of the lessors in an amount equal to the full value of said improvements, and deposit the policies of insurance with said lessors; and the lessee does also hereby covenant and agree to fulfill and perform all governmental and municipal requirements and regulations affecting or relating to said demised premises and property.

IT IS HEREBY FURTHER AGREED AND STIPULATED, that the value of the lands hereinabove described and hereby demised is the sum of thirty-four thousand five hundred fifty-six and 14/100 dollars ($34,556.14), upon which amount rental is to be computed at the rate of six per cent per annum, so far as the investment in land is concerned, and inasmuch as the work of construction of said buildings was actually begun on or before the first day of April, A. D. 1910, rental at the rate of six per cent per annum upon the sum of thirty-four thousand five hundred fifty-six and 14/100 dollars ($34,-556.14), being the agreed value of said land, shall begin to run from the first day of April, 1910, and be payable quarterly in advance as above provided.

AND when, and so soon as, said buildings are completed so that said lessee may begin the occupancy or use thereof, the rental based on the cost of said buildings and improvements shall begin and be payable, and as soon as the cost of said buildings and improvements has been ascertained, such cost shall be added to the sum of thirty-four thousand five hundred fifty-six and 14/100 dollars ($34,556.14), being the agreed value of the land, and on the total sum so obtained said rental of six per cent per annum on the lessors total

investment, shall be computed and thereafter paid quarterly, in advance, as hereinbefore provided.

AND it is hereby further agreed, that if at any time or times during the continuance of this lease, or of any extension or renewal thereof, said lessee shall fail to pay at maturity, as above provided, the amount of any tax, assessment or municipal charge of any kind chargeable against said land, buildings and premises or any part or parts thereof, or shall fail to pay, as aforesaid, the amounts of insurance premiums for insurance on said improvements, or any expense whatsoever chargeable against the premises, and to be paid by said lessee as hereinabove provided, then and in any such case the lessors may pay the same; and the sum or sums so paid at any time or times by said lessors shall be thereupon due and owing from said lessee to said lessors as a part of the rental of said premises and improvements, and said lessee promises and agrees to pay the same accordingly, and said lessors may, after sixty days notice of default in such payment, sue therefor as for rental past due, or resort to any other remedy provided for default in payment of rent.

SAID parties do hereby further mutually agree that if, at the expiration of the above mentioned term of ten years, said lessee shall have well and faithfully paid all rentals, and the amount of all taxes, repairs, insurance premiums and other expense and charges for the upkeep and maintenance of said premises and improvements, and shall have faithfully kept and fulfilled all of the terms of this lease on its part to be kept and fulfilled, then and in such case said lessee may have a renewal of this lease for the further term of ten (10) years, on said lessee giving to said lessors six months written notice prior to the expiration of said original term of ten (10) years, of its desire and intention to so renew the same, and which notice, if so given, shall operate to renew this lease accordingly.

AND said lessors, WALTER H. SCHOELLKOPF and GENEVIEVE S. VOM BERGE, do hereby covenant and agree to sell and convey to said lessee, said KING SEWING MACHINE COMPANY, and it, said lessee, does hereby covenant and agree to buy from said lessors and to pay therefor to said lessors, the said premises and improvements hereinbefore referred to, and let and demised as aforesaid to said lessee, at and for the price of the sum and amount of the lessors' total investment in land and buildings computed as aforesaid, and on which said rental of six per cent per annum shall be based after the completion of said buildings, and use thereof by said lessee shall be begun, and which sale, conveyance and purchase shall be made at the time of the expiration of the original term of ten (10) years of this lease, in case the same is not renewed, and if this lease be renewed as herein provided, then such sale, conveyance and purchase shall be made at the expiration of the renewal term, and said lessors shall convey the said lands, premises and improvements to said lessee by Warranty Deed, conveying the same good title shown by said title searches heretofore furnished to said lessee, continued to the date of such sale and purchase, showing said premises free and clear of all incumbrances.

PROVIDED, however, said lessee may, if it shall so desire, purchase said lands, premises and improvements at the price aforesaid at any time during said original term, or said renewal term, without waiting for the expiration thereof; whenever, under the terms of this agreement, said sale and purchase may be consummated, it shall be made subject to any mortgage which may be placed on said lands, premises and improvements by said lessors, but which mortgage shall not draw interest at any greater rate than that at which the lessee shall be able to place a loan of corresponding amount and conditions, the amount of which mortgage shall be allowed on the purchase price, and that upon the tender of a deed of said premises said lessee will

pay said purchase price, as follows: by assuming the payment of any mortgage then a lien upon said premises and property; twenty-five per cent or more, of the remainder of said purchase price in cash, and the balance by executing and delivering in due form its purchase money bond and mortgage to bear the same date as said deed and covering the same land, premises and improvements, providing for the payment of the remainder of said purchase price in three equal annual installments from the date thereof, with interest from the date thereof at the rate of six per cent per annum payable semi-annually, with the privilege to the mortgagor of paying with any such installment one or more additional installments, or at its option at any time the whole amount unpaid, upon giving the mortgagee thirty days notice in writing of such intention, and which bond and mortgage shall contain the usual tax, interest and insurance clauses, in the ordinary New York State standard form.

IT IS HEREBY ALSO FURTHER AGREED, that in case any of said lands or premises shall be lawfully taken by condemnation proceedings and an award made therefor, the amount received therefrom shall be paid to said lessors, and applied upon the payment of the purchase price of the premises and the rental shall from thenceforth be accordingly reduced.

THE undersigned ANNA J. SCHOELLKOPF, wife of the above named WALTER H. SCHOELLKOPF, in consideration of one dollar ($1.00) to her in hand paid, agrees to waive any dower right she may have in said lands and premises, and for that purpose only she joins in executing this instrument, and will unite for the same purpose in the execution of any conveyance of said premises to be made hereunder.

The agreements and covenants herein contained shall apply to and be obligatory upon the heirs, assigns, legal representatives and successors of the respective parties hereto.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

|  |  |  |
|---|---|---|
| (Signed) | WALTER H. SCHOELLKOPF. | [L. S.] |
| (Signed) | GENEVIEVE S. VOM BERGE. | [L. S.] |
| (Signed) | ANNA J. SCHOELLKOPF. | [L. S.] |

[SEAL.]    KING SEWING MACHINE COMPANY

By (Signed)    W. GRANT KING,

*Vice President.*

[Acknowledgements of all parties.]

[Guarantee of performance on part of King Sewing Machine Company by Sears Roebuck & Company, acknowledgement of same.]

The King Sewing Machine Co. went into immediate and continuous possession under this contract, made improvements which cost in excess of $200,000, and from time to time made further improvements so that on the last day of December, 1919, the total cost of the real estate and buildings erected thereon amounted to $701,648.92, of which amount the petitioner and his sister had contributed $34,556.14, the agreed value of the land, and $200,000 towards the erection of the buildings, and the balance, $467,092.78, had been paid by the King Sewing Machine Co. Both parties carried out the terms of the agreement in every way and on April 1, 1920, in accordance with provisions of the contract, the King Sew-

ing Machine Co. paid the petitioner and his sister $234,556.14 and received from them a deed for the premises.

The Commissioner has determined a gain on the sale of this property by adding to the sale price depreciation sustained from March 1, 1913, to the date of sale and deducting from the total amount so ascertained the March 1, 1913, value, plus the selling expenses.

### OPINION.

ARUNDELL: We have held in the *Appeal of Even Realty Co.*, 1 B. T. A. 355, that depreciation is a factor to be considered in arriving at the basis for determining the gain or loss on the sale of property. Does the fact that petitioner was under a contract obligation to sell his property for a definite amount and the King Sewing Machine Co. was under an equally binding obligation to purchase the property, serve to render inapplicable the rule in the above case here sought to be invoked by the Commissioner?

There is no question but that the buildings erected pursuant to the contract suffered physical depreciation from the date of their erection to the date of sale in 1920. But it does not follow that this depreciation is to be charged against the interest of the petitioner. The contract provided that the petitioner and his sister were to receive $234,556.14 for their interest in the property, plus 6 per cent on that agreed price up to the date of the transfer of title. It seems clear from a reading of the contract that the interest of petitioner and his sister in the property here involved constituted on July 12, 1910, and also on March 1, 1913, an asset of a basic value of $234,-556.14. The exact nature of this asset, however, must be determined by reference to the terms of the contract. Although petitioner and his sister retained the bare legal title to the property, they had put it beyond their power to reclaim the full rights and privileges of ownership. By the terms of this contract they acquired a right to receive a principal sum of $234,556.14, together with an annual income of 6 per cent of this amount from the date of the contract up to the payment of the principal sum. They reserved a further right to hold the legal title to the property until the other party to the contract fully performed its obligations. The obligations of the parties and the time within which these obligations were to be performed were specifically fixed. The petitioner had the right to receive a fixed sum of money on a determinable date. The King Sewing Machine Co. had the right to receive the full legal title to the property with all the appurtenant rights and privileges. These rights were definite and unchangeable. The time of performance did not vary either the amount to be paid or the right to be transferred. In 1920 when the transaction was completed by performance

the petitioner and his sister still held the same asset and it was still worth $234,556.14. It had not appreciated nor had it depreciated in value.

Pursuant to the terms of the contract, certain buildings had been erected, in part by the use of their own money, on the land to which petitioner and his sister held the legal title. Though petitioner and his sister held the legal title it was only a bare legal title subject to the provisions of the contract. When the right to receive the fixed principal sum was extinguished by performance, the legal title was transferred to the second party. But this action was only a formality. The important thing was the wiping out of the contract right to receive the payment of $234,556.14. When it was extinguished the King Sewing Machine Co. could compel delivery of a deed. The buildings erected on the land may have depreciated, but there was no depreciation of the contract right above described. The reservation of title in petitioner and his sister was only as security for the protection of this contract right. When the right was relinquished in 1920 they received in return $234,556.14. This is the same sum they would have received had the right to purchase been exercised by the King Sewing Machine Co. in any previous year.

The conclusion here reached finds support in the well known and generally accepted principle of equity which is stated in Thompson on Real Property, Vol. 5, §4290, as follows:

Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust.

The vendor owns the purchase money and holds the legal title as security. See also *Lenman* v. *Jones*, 222 U. S. 51; *Rexford* v. *Southern Woodland Co.*, 208 Fed. 295, affirmed in 225 Fed. 1022; *Sewell* v. *Underhill*, 111 N. Y. S. 85, affirmed in 197 N. Y. 168; 90 N. E. 430; *Wagstaff* v. *Marcy*, 54 N. Y. S. 1021. Especially is this true where the vendees under the contract to purchase have entered into possession and have made valuable improvements. *Carthage Tissue Paper Mills* v. *Village of Carthage*, 200 N. Y. 1; 93 N. E. 60.

We conclude therefore that petitioner realized no gain upon the final transfer of his interest in the property pursuant to the contract entered into by him in 1910.

> *Order of redetermination in accordance with the foregoing findings of fact and opinion will be entered on 15 days' notice, under Rule 50.*

TRAMMELL dissents.